NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————
DEBORAH FITZPATRICK and LITORIA   :
WRIGHT,
             Plaintiffs,      :
                      :
      v.             :       CIVIL ACTION NO. 08-0299 (JAP)
                      :
COUNTY OF MONMOUTH, et al.,  :       **OPINION**
                      :
           Defendants.    :
———————————————————:

Before the Court is a motion by Defendants New Jersey State PBA Local 240 (the "Union"), Patrick Panella, and Anthony Anderson to dismiss Counts IV, V, VI, and XI of Plaintiffs' Amended Complaint. The motion has been decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendants' motion is granted as to Count XI against the Union, but is denied with respect to the § 1981 claims asserted against Panella and Anderson in Counts IV, V, and VI.

Plaintiffs Deborah Fitzpatrick and Litoria Wright bring the instant suit against their employer, Monmouth County Correctional Institute ("MCCI"), MCCI Warden William Fraser, and the County of Monmouth. Plaintiffs have also brought suit against the Union, which represents all County Corrections Officers, Patrick Panella, the Union's President, and Anthony Anderson, the Union's Vice President (collectively, the "Union Defendants"). In their Complaint, Plaintiffs allege they are victims of unlawful discrimination at MCCI on the basis of their race and gender, in violation of various federal and state anti-discrimination statutes.[1]

---

[1]  All defendants are sued under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* (the "LAD"). (Compl. Counts VII, VIII, IX.) Plaintiffs sue Monmouth County and MCCI pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and

I.      **Background**[2]

Plaintiffs Wright and Fitzpatrick are both African American female corrections officers working at the MCCI facility.   As such, they are members of the Defendant Union.  Beginning in 2003, Fitzpatrick and Wright were allegedly subjected to racial and gender discrimination at MCCI, in the form of repeated denials for requests for overtime assignments, punitive reassignments, denial of fair and equitable vacation allowances, unwanted and unsolicited exposure of pornographic materials, and general harassment consisting of derisive taunts and persistent mocking.  The "ringleaders" of the general harassment suffered by the Plaintiffs appear to be Defendants Panella and Anderson, both white males corrections officers.  Plaintiffs allege that Warden Fraser "turned over many of his supervisory and administrative functions" to Panella and Anderson.  (Compl. ¶ 19.)  Therefore, and by virtue of their leadership positions with the Union, Panella and Anderson "had the responsibility for determining and directing overtime assignments, vacation assignments, shift assignments, and to direct employees relative to other terms and conditions of employment" rendering both men "supervisor[s] as defined by statute." (Compl. ¶¶ 14, 15.)

In the Complaint, Plaintiffs recite a variety of episodes between March of 2006 and November 2007 demonstrating the discriminatory and hostile environment that existed at MCCI, most of which the Court will not address here.  However, the Plaintiffs allege that they were removed from posts in favor of white male corrections officers, that they were reassigned to less

under the Civil Rights Act of 1866, 42 U.S.C. § 1981.  (Compl. Counts I – III.)  The individual defendants and the Union are sued pursuant to 42 U.S.C. § 1981.

[2]      In addressing a motion to dismiss under Rule 12(b)(6), the Court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff.  *Phillips v. County of Allegeheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Accordingly, the facts recited below are taken from Plaintiff's amended complaint unless otherwise indicated and do not represent this Court's factual findings.

desirable posts out of the rotation order in violation of Union rules, that they were denied overtime assignments and PBA days[3] in a discriminatory fashion, that the Plaintiffs were continuously subjected to racial harassment, and were subjected to retaliation for routinely submitting written reports complaining of harassment by white, male coworkers and supervisors. Specifically, Fitzpatrick alleges that Panella and Anderson repeatedly taunted her, telling Plaintiff that she was "stupid" and a "monkey," and at times even imitating chimpanzees and monkeys when she entered the dining hall.  (Compl. ¶¶ 37-39.)

The Plaintiffs also allege that the Union acted arbitrarily towards them.  For example, Fitzpatrick made an errant comment comparing the Union to "gang-type behavior."  Fitzpatrick was disciplined for expressing this opinion.  (Compl. ¶ 34.)  In addition, on November 30, 2007, Fitzpatrick received a letter from Panella that she had been suspended as a member of the Union, stating "'charges would be brought in the near future.'" (Compl. ¶ 47.)  All of Fitzpatrick's Union benefits have been suspended since that time, although her Union dues continue to be deducted from her paycheck.  However, Fitzpatrick has yet to be informed of any Union-related charges connected to the suspension of her membership.  (Compl. ¶ 47.)

The terms and conditions of the Plaintiffs' employment are covered by the collective bargaining agreement[4] between MCCI and the Union, which states that neither MCCI nor the

---

[3]   "A PBA day is a day provided to Union Members by the county.  The president is permitted to provide these days for employees to handle union business."  (Compl. ¶ 20.) Apparently, Panella regularly provided PBA days even when the recipient was not tending to union business.  (Compl. ¶ 20.)

[4]   Generally, a court ruling on a motion to dismiss may only consider the pleadings, attached exhibits, and matters of the public record.  However, The Third Circuit has held that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Union Defendants have appended a copy of the Collective Bargaining Agreement to which Plaintiffs referred in

Union will discriminate against any employee on the basis of, *inter alia*, race or gender. (Compl. ¶ 134.)  Under Article 25 of the agreement, grievances regarding discrimination should "be submitted to the appropriate administrative agency having jurisdiction over the subject matter of the Complaint."  (Defs.' Mot. Dismiss, Ex. B at 38.)

## II.    Discussion

The Union Defendants move to dismiss all counts of Plaintiff's Complaint that are brought pursuant to § 1981: Count IV (unlawful racial discrimination); Count V (unlawful retaliation); Count VI (hostile work environment/harassment)[5]; and Count XI (unlawful racial discrimination).

### A.  Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  In *Bell Atlantic Corp v. Twombly*, 127 S. Ct. 1955, 1969 (2007), the Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6).  The court in *Twombly* stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations… a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.* at 1964-65 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the standard of review for a motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal

---

their Complaint, and this Court has accordingly considered the agreement in deciding this motion.

[5]     Counts IV, V, and VI are brought against Defendants Fraser, Panella, and Anderson. However, this Court considers these counts only as against the movants, Defendants Panella and Anderson.

conclusion[s] couched as factual allegation[s]" (internal quotations omitted)).  Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all allegations in the complaint are true (even if doubtful in fact)[.]"  *Twombly*, 127 S. Ct. at 1965.

### B.  Analysis

Count XI of Plaintiffs' Complaint, which is targeted at the Union, essentially alleges that the Union violated § 1981 when it failed to act fairly and without discrimination towards the Plaintiffs regarding scheduling of assignments, vacations, and overtime in violation of the Collective Bargaining Agreement.  Count XI also alleges that the Union discriminated against Fitzpatrick on the basis of her race by suspending Fitzpatrick's membership without providing any explanation.  (Compl. ¶¶ 135-38.)

§ 1981 was originally intended "to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *L.N. McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976).  However, purposeful discrimination that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981.  *See Gratz v. Bollinger*, 539 U.S. 244, 276 (2003).  § 1981 provides a remedy for employment racial discrimination.  *McDonald*, 427 U.S. at 285.  Although the standards for employment discrimination claims like those asserted here are the same under Title VII and § 1981, *see, e.g., Verdin v. Weeks Marine, Inc.*, 124 Fed. Appx. 92, 95 (3d Cir. 2005), § 1981 prohibits individuals, and not just employers as under Title VII, from racial discrimination against an employee.  *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001).

A § 1981 claim can be brought against a labor union "when the collective bargaining agreement contains an express clause binding both the employer and the union not to

discriminate on racial grounds. . . and when the labor organization as the collective bargaining agent intentionally avoids asserting discrimination-based claims." *Majeske v. Fraternal Order of Police*, 94 F.3d 307, 312 (7th Cir. 1996) (internal quotations omitted).  The Supreme Court has held that a union that intentionally fails to assert discrimination claims and thus breaches its duty of fair representation is liable under both Title VII and 1981 where that breach is discriminatorily motivated.  *See Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) ("a union breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith.")

The Union contends that although the Plaintiffs claim they have been discriminated against in violation of § 1981, their claim against the Union is actually one for breach of the duty of fair representation.  The Union argues that it is not liable under § 1981 because Plaintiffs have not alleged that the Union, or the Union Defendants, have failed or refused to enforce any aspect of the Collective Bargaining Agreement.  More specifically, the Union Defendants argue that the § 1981 claims must be dismissed because the Plaintiffs fail to allege that the Union interfered with their ability to bring a discrimination grievance in accordance with Article 25 of the Agreement, or that Plaintiffs "requested or sought to utilize the applicable grievance procedure to challenge the alleged inequitable access to overtime assignments, loss of preferred personnel assignments, or the inequitable application of any other term and condition of employment." (Defs.' Br. 13.)

The Court agrees that Plaintiffs have failed to set forth a viable § 1981 claim against the Union.  Plaintiffs nowhere allege that the Union failed to process grievances filed by the Plaintiffs complaining of racial discrimination at MCCI.  Nor have Plaintiffs alleged that the Union in any way impeded Plaintiffs' ability to lodge a grievance regarding their treatment at MCCI.  Further, Plaintiffs have failed to establish that Fitzpatrick's suspension from the Union

was motivated in any way by racial animus, apart from the conclusory and self-serving allegation that, "[t]hese acts were motivated by racial animus."  (Compl. ¶ 138.)  Such a "legal conclusion couched as factual allegation" cannot form a basis of a discrimination claim.  *Baraka*, 481 F.3d at 195.

However, it is clear from the Complaint that Panella and Anderson are sued based primarily in their positions as Plaintiffs' supervisors at MCCI, and only in part based on the leadership positions they hold in the Union.  The Plaintiffs have not limited their claims against Panella and Anderson to a failure to fairly represent the Plaintiffs in the grievance process. Accordingly, the Court will not dismiss the § 1981 counts against Panella and Anderson because Plaintiffs have stated adequate facts to sustain claims for discrimination, hostile work environment and harassment against them under that statute.

## III.    Conclusion

The Union Defendants' Motion to dismiss is therefore granted as to Count XI, and denied as to Counts IV, V, and VI.  An appropriate Order accompanies this Opinion.


Dated:        August 24, 2009